IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KENNETH M. FULLER,            Case No. 6:15-cv-00148-AA
                                    OPINION AND ORDER
        Plaintiff,

   v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

Merrill Schneider
Schneider Kerr Law Offices
P.O. Box 14490
Portland, OR 97293
    Attorney for plaintiff

Janice E. Hebert
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Sarah L. Martin
Social Security Administration
Office of General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

AIKEN, Judge:

Plaintiff Kenneth M. Fuller brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Title II disability insurance benefits. For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for an immediate award of benefits.

## PROCEDURAL BACKGROUND

On August 30, 2010, plaintiff applied for disability insurance benefits. Tr. 195. He alleges disability beginning March 11, 2011.[1] Tr. 43. His application was denied initially and upon reconsideration. Tr. 100, 118. On July 1, 2013, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 33. Plaintiff, represented by counsel, testified, as did a lay witness and a vocational expert ("VE"). On July 23, 2013, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 26. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1.

## STATEMENT OF FACTS

Born October 13, 1958, plaintiff was 52 years old on the alleged onset date of disability and 54 years old at the time of the hearing.[2] Tr. 44, 195. He has an associate's degree. Tr. 58. He previously worked as a warehouseman/forklift driver; warehouse lead person; security/loss prevention worker; and electrical assistant. Tr. 77. In 2005, plaintiff fell off an approximately twelve-foot platform at work. Tr. 300. He landed on his head, sustaining multiple facial fractures, scalp lacerations, and an epidural hematoma that required surgical intervention. In 2007, plaintiff

---

[1] Plaintiff originally alleged an onset date of February 14, 2000. Tr. 195. At the hearing and after consulting with counsel, he amended his application to March 11, 2011, acknowledging substantial gainful activity precluded him from receiving disability benefits prior to that date. Tr. 43.

[2] In his decision, the ALJ erroneously stated plaintiff was 41 years old on the alleged disability onset date. Tr. 24. This error, which was harmless, appears to be attributable to the fact plaintiff amended his onset date at the hearing, as explained in footnote 1 of this Opinion.

Page 2 - OPINION AND ORDER

had a heart attack and was diagnosed with coronary disease. Tr. 350. In his application for benefits, he alleges disability due to traumatic brain injury and heart disease. Tr. 199. Medical records also show a pre-accident history of depression. Tr. 318.

## STANDARD OF REVIEW

A district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must "consider the record as a whole" and weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1502. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either

singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national and local economy. *Yuckert*, 482 U.S. at 142; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566(c).

## THE ALJ'S FINDINGS

At step one of the process outlined above, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 19. At step two, the ALJ determined plaintiff's post-traumatic brain injury, anxiety, and depression were severe impairments. Tr. 20. The ALJ acknowledged evidence of coronary artery disease and obesity, but deemed these impairments non-severe. At step three, the ALJ found plaintiff's impairments, singly and in combination, did not meet or equal the requirements of a listed impairment.

The ALJ then evaluated how plaintiff's impairments affected her ability to work. The ALJ resolved plaintiff possessed the residual functional capacity ("RFC") to perform:

> [M]edium work as defined in 20 [C.F.R. §] 404.1567(c) except he is further limited to no more than occasional climbing and balancing. He must avoid concentrated exposure to moving machinery, unprotected heights, or similar workplace hazards. He should also avoid more than occasional exposure to flashing lights. He is limited to simple, repetitive, routine tasks requiring no more than occasional interaction with the general public.

Tr. 21.

At step four, the ALJ determined plaintiff could not perform any past relevant work. Tr. 24. At step five, the ALJ concluded "jobs . . . exist in significant numbers in the national economy that

Page 4 - OPINION AND ORDER

the claimant can perform." Tr. 25. Accordingly, the ALJ concluded plaintiff was not disabled under the Act.

**DISCUSSION**

Plaintiff argues the ALJ erred by (1) discrediting plaintiff's testimony without clear and convincing reasons for doing so; (2) improperly evaluating the lay witness statements of plaintiff's ex-wife and friend; and (3) discrediting the opinion of his treating physician without specific, legitimate reasons for doing so.

*I.   Credibility*

Plaintiff first argues the ALJ failed to provide clear and convincing reasons for rejecting his testimony concerning the severity of his symptoms. When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

At the hearing, plaintiff testified his ability to perform his job as a warehouseman and forklift driver degraded over time following his accident. Tr. 42. After he had three "reportable accidents" while driving the forklift, plaintiff's employer took him off forklift duty and had him do paperwork such as inventory. Tr. 45-46, 65. The employer cut his hours from full-time to six hours per day because he was unable to work for a full day. Tr. 66. Later, his hours were further cut to four hours

Page 5 - OPINION AND ORDER

per day because he kept making mistakes. Tr. 42. Employer records corroborate plaintiff's account. *See* Tr. 181-82 (incident report regarding forklift accidents); tr. 179-80 (employer questionnaire filled out by human resources director indicating plaintiff was assigned "fewer or easier duties," "less hours," and "extra help/supervision" compared to employees in similar positions and assessing plaintiff's productivity at fifty percent or less than other employees' productivity).

Plaintiff states he continues to engage in a variety of activities since he stopped working, including doing "odd jobs" such as welding and electrical work; doing projects in his shop at home; preparing meals; driving his teenage daughter to activities; helping with household chores; attending church; and shopping for groceries. Tr. 48-57. However, his fatigue affects his ability to concentrate, answer questions, focus, and do things without making mistakes. Tr. 230. He consistently testified he is primarily able to do these activities in the morning. Tr. 49, 58. He states doing any activity for a couple of hours "wipes [him] out" and he needs to rest or take a nap. Tr. 49, 54, 57, 217, 219, 230. If he pushes himself to work beyond the two-hour threshold in the shop he makes mistakes and injures himself. Tr. 64-65. He estimates he can do five hours of "light dut[y]" work in a typical day with significant naps or rest breaks. Tr. 215.

The ALJ found plaintiff's testimony about his fatigue not credible for three reasons. First, the ALJ noted that although plaintiff's "chronic fatigue and cognitive problems reportedly pre-dated his decision to stop working by several years," plaintiff was "nevertheless able to work 8-hour shifts." Tr. 22. Ordinarily, if a plaintiff has worked in the past notwithstanding an allegedly disabling condition, an ALJ may conclude that condition does not render the plaintiff disabled. *Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988). But this is not the ordinary case. Medical records show plaintiff returned to work on a part-time basis after the accident. He slowly ramped back up to nearly full-time work, eventually reaching thirty- hours per week. He consistently reported fatigue and other cognitive problems to medical providers. *E.g.* Tr. 308 (late 2005, working thirty-four hours per week but "extremely fatigued, especially on his eight hour days"); Tr. 325-26 (early 2006, "quite exhausted" with thirty-four hour per week schedule); Tr. 333 (summer 2007,

Page 6 - OPINION AND ORDER

"difficulty working an eight-hour day without feeling 'wiped out'"); Tr. 383 (summer 2009, "no energy and can barely function" by Thursday of workweek and "no quality of life left" after work). During this same period, his marriage deteriorated, as did his ability to socialize or volunteer — activities he and his wife reported he had done frequently in the past. As noted, plaintiff's testimony and employer records reveal his hours were cut numerous times due to his inability to perform job responsibilities to an acceptable standard. The record further suggests plaintiff may have only been able to stay in his position because his employer was willing to make unusual and significant accommodations for his impairments — for example, the employer continued to pay him a full-time salary even after cutting his hours to half-time. In sum, the record shows plaintiff's fatigue and other mental symptoms persistently interfered with his ability to work. Under these unusual circumstances, plaintiff's ability to work in the years after the accident is not a convincing reason to discredit his testimony.

Second, the ALJ found plaintiff's activities of daily living inconsistent with the purported severity of his symptoms. The ALJ noted plaintiff is able to drive; spend two hours in his shop in the mornings; perform welding and electrical work; go shopping; attend church; help his daughter with her homework; read; play computer games; and watch television. Tr. 23. However, the ALJ did not address plaintiff's consistent statements, both at the hearing and to providers in the medical records, that he is only able to sustain activity for about two hours before he needs a significant rest period and that his stamina deteriorates over the course of the day. Thus, substantial evidence does not support the ALJ's second reason for an adverse credibility determination because plaintiff's statements about his ability to engage in activities for limited periods of time are fully consistent with the alleged severity of his fatigue.

Finally, the ALJ concluded plaintiff's testimony he only sees a doctor every six months for his fatigue and cognitive symptoms "reasonably suggests that his medical problems were not severe enough to merit more frequent medical attention." Tr. 24. Substantial evidence does not support this reading of the record. For years, plaintiff aggressively sought medical care and other support

Page 7 - OPINION AND ORDER

services in an attempt to address his cognitive and emotional problems, though psychological evaluations, medication, counseling sessions with his wife, and vocational coaching, among other methods. *See* Tr. 275-93, 307-30, 366-71, 411-90, 507-98. At several points in the years after the accident, he saw Dr. Marie, his treating physician, more frequently than once month in addition to seeing specialists. *See, e.g.*, Tr. 585-97 (documenting eight visits with Dr. Marie during the second half of 2008). Although choosing "conservative treatment" over "aggressive treatment" is a permissible ground for discounting a plaintiff's symptom testimony, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted), a plaintiff should not be penalized for backing off an aggressive treatment schedule when a zealous, years-long effort fails to yield significant relief.

The government points to medical records stating plaintiff's head injury alone could not have caused such chronic, significant fatigue. *See* Tr. 90 (agency nonexamining physician opining "injury such as the clmt sustained is not consistent with a gradual decline-type pattern but is rather of a type that stabilizes w/in about 6 mos to one year."); Tr. 344 (examining physician opining "[i]t is extremely unlikely . . . that a closed head injury without cognitive deficits . . . would result in chronic significant fatigue"). The ALJ did not directly list this as a reason for the adverse credibility finding, and in fact specifically found plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 22.

Nonetheless, the ALJ does make some statements arguably suggesting skepticism the head injury alone caused the fatigue and mental symptoms. *See* Tr. 23 (noting "mild" and "intermittent" cognitive difficulties after the accident). Neither the government nor the ALJ acknowledges, however, that a number of plaintiff's examining physicians suggest his symptoms may have been caused by a combination of the brain injury, heart attack, and depression. *See* Tr. 341 (examining psychologist characterizing plaintiff as "medically complex because he also suffers from major depression and heart disease, which certainly can have influences on his symptoms"); Tr. 370 (examining neuropsychologist stating "preexisting depression . . . might well have a synergistic influence on injury-related distress, particularly as the injury has been complicated by a subsequent

serious medical event [the heart attack]"); Tr. 386 (examining neurologist hypothesizing fatigue is "multifactorial" with multiple causes). Thus, the ALJ erred to the extent he discredited plaintiff's symptom testimony as lacking a reasonable basis in the medical evidence. The ALJ failed to provide clear and convincing reasons for rejecting plaintiff's subjective symptom statements.

*II.    Lay Witness Testimony*

Plaintiff also argues the ALJ improperly discredited written statements from plaintiff's ex-wife, Jan Fuller ("Fuller"), and the hearing testimony of plaintiff's friend, Darien Fadeley ("Fadeley"). Generally, lay witness testimony describing a plaintiff's symptoms is "competent evidence that the ALJ must take into account." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). "[I]n order to discount competent lay witness testimony, the ALJ 'must give reasons that are germane to each witness.'" *Id.* (citing *Dodrill*, 12 F.3d at 919).

The statements of Fuller and Fadeley corroborate plaintiff's testimony about his fatigue and other cognitive symptoms. Although plaintiff and Fuller are divorced, they still live together. Tr. 52. Fuller stated the brain injury "severely affected [plaintiff's] ability to reason, problem solve, manage himself and deal with others." Tr. 222. Although plaintiff continues to provide some help around the house by vacuuming, putting away clothes, cooking, mowing the lawn, and doing minor repairs, Fuller reported he has only "two to three 'good' hours of productive activity in a day." Tr. 224, 295.

Fadeley testified plaintiff does minor electrical projects at her farm about once a month. She reported she "really ha[s] to get him early in the morning . . . [b]ecause . . . he doesn't have the energy or the stamina to be able to do anything more than that." Tr. 72. Moreover, Fadeley reported plaintiff's quality of work "degrad[es] from the time that he starts to the time he's finished with it." Tr. 72. She limits his projects to a couple of hours at a time because "that's all he is effective for." Tr. 73. She also has downgraded the difficulty level of the jobs plaintiff does; although he did "major electrical work" on the farm about fifteen years ago, he now replaces lightbulbs or does

projects such as installing outdoor lighting with simple wiring purchased in a kit at a home improvement store. Tr. 74-75.

The ALJ gave partial weight to the lay witness statements, crediting them to the extent they supported a conclusion plaintiff could not engage in past work and would have to be limited to less cognitively demanding tasks. Tr. 23-24. The only reason the ALJ gave for discrediting the lay witnesses' statements regarding plaintiff's limited stamina and number of "good" hours in a day was to characterize those statements as inconsistent with plaintiff's account of his activities of daily living. For the reasons set forth in the section addressing plaintiff's credibility, this is not a germane reason to discredit Fuller's and Fadeley's statements.

*III.    Treating Physician*

Plaintiff next asserts the ALJ erred in giving little weight to the opinion of Sally Suzanne Marie, M.D., plaintiff's treating physician since 1999. Tr. 603. Dr. Marie opined plaintiff could work no more than four hours per day consistently, predicted more than sixteen hours of absences per month stemming from his impairments, and assessed that fifty percent of the work day plaintiff's attention and concentration would be so impaired he "could not be expected to perform even simple tasks." Tr. 516, 603-06. When a treating physician's opinion conflicts with other evidence in the record, an ALJ may only reject the opinion for specific, legitimate reasons supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

The ALJ interpreted Dr. Marie's hours restrictions and predictions regarding absenteeism as relating only to plaintiff's past work as a warehouseman and forklift driver, refusing to apply those predictions to a less cognitively demanding position. Tr. 24. This is not a reasonable way to read Dr. Marie's opinion. Although Dr. Marie lists plaintiff's hours restrictions at his prior job as a reason underlying her predictions, the predictions themselves are in response to broad questions about future employment.

Dr. Marie's opinion does appear to rest, in part, on premises contradicted by the record. She writes plaintiff is unable to do outdoor chores or go grocery shopping, Tr. 605, yet plaintiff and the

Page 10 - OPINION AND ORDER

lay witnesses testified plaintiff is able to perform these activities. This minor contradiction appears, based on Dr. Marie's statement plaintiff is able to do indoor chores, to be related to plaintiff's sensitivity to light and sound, a condition not at issue in this appeal. It is questionable whether internal conflict on such a minor issue is a sufficient reason to give little weight to the opinion of the physician who treated plaintiff for more than a decade. It is not necessary to resolve this issue, though, because even assuming substantial evidence supports the ALJ's treatment of Dr. Marie's opinion, the ALJ's other errors require remand.

*IV.    Instructions on Remand*

When the ALJ errs in denying a plaintiff's disability claim, the typical remedy is a remand for further proceedings. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). However, a district court should instead remand for an immediate award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* When these three requirements are met, remand for further proceedings is appropriate only if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

The requirements for a remand for award of benefits are met here. As explained above, the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's testimony and the lay witness statements. Further, crediting that improperly discredited evidence as true, a finding of disability would be required. The VE testified ten percent "off task" time in an eight-hour work day would be "a problem" and twenty percent "off task" time would mean plaintiff "simply cannot hold or maintain competitive work." Tr. 81. Crediting plaintiff's testimony and the lay witness statements about fatigue and stamina as true, his "off task" time would approach fifty percent, far in excess of the twenty percent threshold. Moreover, the medical record in this case is amply developed, and I find it creates no serious doubt as to whether plaintiff is disabled. Because further administrative

proceedings would serve no useful purpose in this case, it is remanded for an immediate award of benefits.[3]

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for an immediate calculation of benefits.

IT IS SO ORDERED.

Dated this 23rd day of February 2016.

_Ann Aiken_
Ann Aiken
United States District Judge

---

[3] The government argues remand for further proceedings is the only available relief in this case because plaintiff failed to "clearly and distinctly" argue why an immediate award of benefits is justified in his opening brief. *See Avila v. Los Angeles Police Dep't*, 758 F.3d 1096, 1101 (9th Cir. 2014) (articulating the waiver rule). To the contrary, I find plaintiff's request for remand for an immediate award of benefits in his opening brief was sufficiently clear and distinct to raise the issue.